# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

NOAH WILLIAM CRUM,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C14-4055-MWB

**REPORT AND
RECOMMENDATION**

_____

Plaintiff Noah William Crum seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Crum contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

## I. BACKGROUND

Crum was born in 1959 and has an associate's degree in banking and finance. AR 28, 82. He has worked as a retail store manager, a cashier, a salesperson, a truck loader and a yard worker. AR 82. He applied for DIB and SSI benefits on January 9, 2009, alleging a disability onset date of May 18, 2008. AR 245-57. He alleged disability due to heart problems, depression, metal plates in his legs, hernia and diabetes. AR 284. On

April 23, 2009, his claims were denied. AR 138-41. Crum then filed a request for reconsideration, which was denied. AR 145-46, 155-65.

Crum then requested a hearing before an Administrative Law Judge (ALJ). AR 166-68. The first hearing occurred on March 16, 2011, and was held before ALJ Ronald Lahners. AR 116-27. Crum and a vocational expert (VE) testified. AR 77-107. On April 21, 2011, the ALJ issued a decision denying Crum's claim. AR 116-27.

Crum then sought review by the Appeals Council. AR 202-03. On May 10, 2012, the Appeals Council granted Crum's request and remanded the case to the ALJ with directions for further proceedings. AR 134-36. A second hearing was held on November 27, 2012, during which Crum and the VE again testified. AR 36. During that hearing, Crum amended the alleged onset date of disability to December 17, 2009, his fiftieth birthday. AR 10, 41-43.

On January 29, 2013, the ALJ again denied Crum's claims. AR 10-29. Crum again sought review by the Appeals Council. AR 5. On May 13, 2014, the Appeals Council denied his request. AR 1-4. The ALJ's second decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981.

On July 9, 2014, Crum filed a complaint (Doc. No. 3) in this court seeking review of the Commissioner's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case. The parties have briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord* 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant

is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(B).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.920(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting." *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see also Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a

minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d) ; *see also Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner will also consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, while the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.    THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

(2)    The claimant has not engaged in substantial gainful activity since December 17, 2009, the amended alleged onset date (20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: depressive disorder, not otherwise specified (NOS); anxiety disorder, NOS; diabetes mellitus; a history of atherosclerotic heart disease; hypertension; and obesity (20 C.F.R. § 404.1520(c) and 416.920(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), i.e., he can lift and carry 20 pounds occasionally and ten pounds frequently; sit six hours in an eight-hour workday; stand six hours in an eight-hour workday; walk six hours in an eight-hour workday; and has unlimited use of the extremities. He should avoid climbing ladders and scaffolding. He should avoid constant fingering, bilaterally. He should avoid concentrated vibration. Due to his mental impairments, he should be able to remember and understand instructions, procedures, and locations. Due to trying to interact with supervisors, co-workers, and the public would need to look at some type of employment that would be absolutely minimized and certainly not working with the general public at all. He could exercise good judgment and respond appropriately to changes in the workplace.

(6)     The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565 and 416.965).

(7)     The claimant was born on December 17, 1959 and was 50 years old, which is defined as a person closely approaching advanced age (age 50-54), on the amended alleged disability onset date (20 C.F.R. § 404.1563 and 416.963).

(8)     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564 and 416.964).

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 404.1569, 404-1569(a), 416.969, and 416.969(a)).

(11)   The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2009, the amended alleged onset date, through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920(g)).

AR 12-29.


## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

# V.     DISCUSSION

Crum contends the ALJ's decision is flawed for three reasons:  (1) it violates the law of the case doctrine; (2) the ALJ erroneously ignored evidence and failed to explain the changes made to the RFC determination on remand; and (3) the VE's testimony was flawed.  I will address each argument separately.

## A.     *The Law of the Case Doctrine*

Crum argues the ALJ's decision on remand violated the law of the case by amending Crum's RFC.  He contends that the Appeals Council's remand order allowed only for clarification of the limitations previously found, not a reevaluation of the entire RFC.  The Commissioner argues the law of the case doctrine is inapplicable and that the remand order did not preclude the ALJ from changing any of the prior RFC findings.  The Commissioner further contends that the second decision was based on a reconsideration of all evidence, including new evidence, and was "necessitated by an initially faulty decision."  Doc. No. 13 at 7.

### 1.     *Applicable Standards*

The law of the case doctrine "provides that when a court decides a rule of law, that decision should govern the same issues in subsequent stages of the same case." *UniGroup, Inc. v. Winokur*, 45 F.3d 1208, 1211 (8th Cir. 1995).  The purpose of the doctrine is to prevent the relitigation of settled issues.  *Id*.  Among other things, the doctrine requires lower courts to follow remand orders and "adhere to decisions made in earlier proceedings."  *Vander Molen v. Astrue*, 630 F.Supp.2d 1010, 1015 (S.D. Iowa 2009) (internal citations and quotations omitted).

The Eighth Circuit Court of Appeals has held that the law of the case doctrine applies to both courts and administrative agencies on remand.  *Steahr v. Apfel*, 151 F.3d 1124, 1125 (8th Cir. 1998); *Brachtel v. Apfel*, 132 F.3d 417, 419-20 (8th Cir. 1997).  In

Social Security cases, the permissible scope of the ALJ's decision after remand is guided by the instructions from the Appeals Council. *Meyerhoff v. Colvin*, No. C12-3046-MWB, 2013 WL 3283696 at *17 (N.D. Iowa 2013).

A reviewing court may remand with or without limitations. *United States v. Bates*, 614 F.3d 490, 494 (8th Cir. 2010). "ALJ's may not re-litigate issues already settled by their remand orders." *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1215 (C.D. Cal. 2005). When remand orders contain instructions concerning the scope of decision, issues to be addressed, or other evidence to examine, "deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Id.* at 1214 (quoting *Sullivan v. Hudson*, 490 US. 877, 886 (1989)).

The law of the case doctrine protects the "settled expectations of the parties." *Clarke v. Bowen*, 843 F.2d 271, 276 (8th Cir. 1988). The doctrine controls an issue when the issue is unrelated to the reason for remand and nothing about the order suggests a need to re-evaluate the issue. *Meyerhoff*, 2013 WL 283696, at *18. The doctrine applies to issues that were either explicitly decided or settled by "necessary implication." *Id.* Factors to consider in determining whether an issue was implicitly decided are "(1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated." *McIlray v. Kerr-McGee Coal Corp.*, 204 F.3d 1031 (10th Cir. 2000) (quoting *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 707 (10th Cir. 1993), *modified on other grounds sub nom. Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078 (10th Cir. 1994) (en banc)).

The law of the case doctrine does not apply to general remand orders or the issues that formed the basis for remand. *Williams v. Apfel*, 65 F. Supp. 2d 1223, 1230 (N.D. Okla. 1999). For example, when a court instructs the ALJ to simply "create a full and

proper record" there is no instruction to proceed upon a certain factual finding, so the law of the case does not apply. *Id.* A district court is free to decide any issue not expressly or impliedly disposed of on appeal. *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 229 F. Supp. 2d 903, 914 (N.D. Iowa 2004). When subsequent proceedings follow a general remand, the ALJ may properly decide "anything not foreclosed by the mandate." *See Guidry*, 10 F.3d at 706.

### 2. Analysis

The relevant portion of the ALJ's first RFC determination was as follows:

> Due to his mental impairments, he would have moderate limitations in the ability to respond appropriately to changes in the work setting and in the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

AR 120. After determining that remand was necessary, the Appeals Council ordered:

> Upon remand the [ALJ] will:
>
> Obtain additional evidence concerning the claimant's mental and physical impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The additional evidence may include, if warranted and available, consultative examinations with psychological testing and medical source statements about what the claimant can still do despite the impairments.
>
> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p) . . .
>
> In compliance with the above, the [ALJ] will offer . . . a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the [AR] and issue a new decision.

11

AR 136.  After the second hearing, the relevant portion of the ALJ's RFC determination changed to the following:

> Due to his mental impairments, he should be able to remember and understand instructions, procedures, and locations.  Due to trying to interact with supervisors, co-workers, and the public would need to look at some type of employment that would be absolutely minimized and certainly not working with the general public at all.  He could exercise good judgment and respond appropriately to changes in the workplace.

AR 15.  Crum contends that the ALJ's initial finding of moderate limitations in his ability to respond to changes in the workplace, complete a normal workday and perform at a consistent pace should have remained in the RFC on remand.  Doc. No. 12 at 6.

Courts have found error when an ALJ reexamined steps on remand that had no connection to the issue on appeal.  *See Ruiz v. Apfel*, 24 F. Supp. 2d 1045, 1050 (C.D. Cal. 1998) ("The remand order did not authorize the Appeals Council or the ALJ to revisit the previous step-four determination . . ." but only to make complete credibility findings); *Ischay*, 383 F. Supp. 2d at 1218 ("The [remand] stipulation nowhere indicated that remand was necessary to enable the ALJ to revisit any of the findings he made in steps one through four . . . only that remand was necessary . . . on one narrow issue: . . . further vocational expert testimony"); *Allen v. Astrue*, No. CV 09-7239 JCG, 2010 WL 4825925, at *6 (C.D. Cal. Nov. 2, 2010) ("[T]he stipulation for remand provided only that remand was necessary for the ALJ to . . . obtain additional evidence on one narrow issue—Plaintiff's mental impairment").

In *Meyerhoff*, this court found that the ALJ violated the law of the case when he removed a limitation from the RFC on remand.  2013 WL 3283696 at *1-2.  There, the remand order was to make further inquiry into the claimant's need for periodic breaks or need to shift positions.  *Id*. at *1.  The order made no mention of other limitations in the initial RFC.  The court held those limitations were the law of the case.  *Id*.

By contrast, in *Bates* the Eighth Circuit remanded a case without making factual findings, instead instructing the trial court to "conduct the proceedings necessary to make the appropriate findings" about the applicability of a particular law. 614 F.3d at 494. The lower court was thus able to receive and reconsider evidence on that issue without violating the law of the case doctrine. *Id.; see also Brachtel*, 132 F.3d at 420 (law of the case doctrine did not apply because the Appeals Council did not make a finding of fact but instead instructed the ALJ to make a "full and proper record.").

Crum relies on *Allen* to argue that the ALJ cannot change earlier findings unless the Appeals Council commands him to do so. Doc. No. 12 at 7 (citing *Allen*, 2010 WL 4825925 at *8). In *Allen*, the court held that the ALJ should not have reconsidered the claimant's physical limitations because the Appeals Council specifically requested reconsideration of the claimant's *mental* limitations. 2010 WL 4825925, at *8. Here, however, the Appeals Council did not impose any express limits on the scope of the ALJ's reconsideration on remand. Nor did the Appeals Council explicitly or impliedly decide any issues of fact concerning Crum's RFC. Instead, the Appeals Council directed the ALJ to obtain additional evidence, review the claimant's limitations and provide specific rationales for his findings. On remand, the ALJ then received approximately 350 pages of new medical evidence. AR 783-1137. The ALJ followed the Appeals Council's directive by giving "further consideration to the claimant's maximum residual functional capacity" and making new findings as to Crum's RFC.

"The [ALJ] shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 12224 (10th Cir. 2004) (it was "certainly within the ALJ's province" to revise his initial RFC determination when the case was remanded to establish the alleged onset date of claimant's disability); *Campbell v. Bowen*, 822 F.2d 1518, 1522-23 (10th Cir. 1987) (finding no error when the Secretary changed the claimant's RFC on a remand to obtain

testimony about the claimant's transferability of skills). In considering all of the relevant factors, I conclude that the law of the case doctrine did not preclude the ALJ, on remand, from making new findings as to Crum's RFC.

## B. *Substantial Evidence*

Crum argues that the ALJ's decision on remand is not supported by substantial evidence because the ALJ – without explanation – ignored relevant evidence from Dr. Baker, Ph.D., and Jeanette Tobin, LSW. The Commissioner disagrees.

### 1. *Applicable Standards*

The ALJ is not precluded from changing a previous determination on remand if he is presented with substantially different evidence. *Hulsey v. Astrue*, 622 F.3d 917, 925 (8th Cir. 2010). The ALJ must determine the claimant's RFC from all relevant evidence, including medical records and observations from treating physicians and others. *Page*, 484 F.3d at 1043. He must only "articulate his rationale sufficiently to allow meaningful review." *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987).

"A deficiency in opinion-writing is . . . not a sufficient reason to set aside an ALJ's finding, however inaccuracies, incomplete analysis, and unresolved conflicts of evidence can serve as a basis for remand." *Kunik v. Colvin*, 996 F. Supp. 2d 751, 762 (N.D. Iowa 2014) (citing *Wildman v. Asture*, 596 F.3d 959, 966 (8th Cir. 2010) (internal quotations and citations omitted)). If relevant evidence was overlooked, that flaw could form a basis for remand. *Id.* The ALJ must explicitly mention and discuss uncontradicted evidence, even if it is only a brief discussion. *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). The ALJ also has a duty to explain his or her decision if it contradicts some part of the evidence in the record. *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 18 (D.D.C. 2009). A silent opinion could mean such evidence was ignored, forgotten, irrelevant or rejected but the court would not know which. The court can review an

ALJ's decision properly only if there is sufficient explanation for it. *Brown v. Bowen*, 794 F.2d 703, 708 (D.C. Cir. 1986).

At the same time, however, it is well-established that an ALJ is not required to discuss *every* piece of relevant evidence. *Wildman*, 596 F.3d at 966. Failure to discuss does not mean such evidence was not considered. *Kunik*, 996 F. Supp. 2d at 762. The ALJ is only required to present a "minimal level of articulation" to show his or her assessment of the evidence. *Stephens*, 766 F.2d at 287.

### 2.    *Analysis*

As discussed above, the ALJ was ordered on remand to obtain additional evidence and give further consideration to the claimant's RFC. By the time of the second hearing, the record contained nearly one year's worth of additional medical evidence. AR 783-1137. Crum argues that the ALJ ignored some of that new evidence, including a statement in Dr. Baker's opinion that Crum had poor responses to judgment items. AR 879; Doc. No. 16 at 2. Along with the sentence Crum cites, the report stated that Crum's "judgment and insight are low but not impaired" and concluded that Crum's "[a]bility to use good judgment and respond appropriately to change in the workplace seems present." AR 878-79. Dr. Baker noted only mild difficulty in Crum's ability to respond appropriately in usual work situations. AR 881.

While the ALJ did not specifically comment on Dr. Baker's notation that Crum's responses to judgment items were poor, he discussed Dr. Baker's conclusions and provided a summary of what the evaluation revealed. AR 23-24. As noted above, the ALJ is not required to discuss every piece of relevant evidence, and certainly not every finding contained in every report. *See Wildman*, 596 F.3d at 966. Instead, the ALJ must sufficiently articulate his or her rationale. *Walker*, 834 F.2d at 643. The ALJ met this standard by summarizing Dr. Baker's report and incorporating its conclusions into his analysis. AR 24, 26.

Crum also points to several reports from Ms. Tobin that he claims the ALJ "completely failed to address." Doc. No. 16 at 3. However, the ALJ discussed a treatment note Ms. Tobin prepared on October 23, 2012, one month before the second hearing. AR 25, 1022. In that document, Ms. Tobin noted that Crum's judgment was good and his insight was fair. AR 1022. Ms. Tobin indicated that Crum described his concentration as fair and his memory as poor. *Id.* The same description of Crum's judgment, insight, concentration and memory was set forth in the previous treatment notes that Crum claims the ALJ ignored. AR 886, 890-96, 901, 903, 907-14, 1022, 1027-29, 1032, 1037-39. By discussing the examination closest to the date of the second hearing, which reported the same findings included in the previous treatment notes, it was unnecessary for the ALJ to discuss each one individually. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Given the ALJ's specific references to the medical findings set forth in Dr. Guntharp's letter, it is highly unlikely that the ALJ did not consider and reject Dr. Guntharp's opinion . . .").

The ALJ also referenced a November 14, 2012, letter from Ms. Tobin in which she updated an opinion provided in March 2011. AR 25, 1018. The ALJ noted Ms. Tobin's findings that Crum continued to suffer from depression and anxiety, which decreased his ability to be employed and work with others. AR 20, 25. The ALJ found that Ms. Tobin's opinion is not supported by the medical evidence of record, including her own treatment notes. AR 20.

The ALJ discussed Dr. Baker's and Ms. Tobin's findings in the course of his RFC analysis. While he did not expressly address every detail, it is incorrect to contend that the ALJ simply ignored those findings. The real issue is whether the entire record, including the old and the new evidence, supports the revised RFC. Even if the evidence can support two inconsistent opinions, the decision must be affirmed so long as the ALJ adopts one of them. *Culbertson* 30 F.3d at 939.

Here, a crisis assessment from Wade Keuhl, LISW, noted that Crum's judgment and insight were poor. AR 654. An assessment from Janette Cline, LMSW, noted that Crum's judgment was poor and his insight was limited. AR 683. However, an initial assessment report from Joelle Fellinger, APNP, described Crum as having fair concentration, fair insight, normal intelligence and impaired judgment from his current situation. AR 563. In a mental RFC assessment, Linda Ingison, Ph.D., found that Crum had good basic judgment, could understand, carry out and remember instructions, and had organized thinking and normal speech. AR 573-76. However, she also found that Crum had little insight into his own difficulties and might have problems with stress demands in a typical work place. *Id.*

A state agency medical consultant, Michael Mandli, Ph.D., noted only moderate limitations in the ability to respond appropriately to changes in the work place. AR 624. Laurie Warren, P.A., found that Crum was "able to make good decisions at times." AR 651. Notes from Ms. Tobin classify his judgment as good and his insight as either fair or excellent. AR 743, 748, 752, 754, 758, 760, 886, 890-96, 901, 903, 907-14, 1022, 1027-29, 1032, 1037-39.

Crum cites a treatment note from Ms. Warren to argue that the limitations from the first RFC should have been included in the second one. Doc. No. 16 at 2. However, that note addressed anxiety. AR 873. The inclusion of anxiety as a limitation did not change between the first and second RFC determination. On remand the ALJ noted that Crum should locate or consider employment in which contact with co-workers and supervisors "would be absolutely minimized" and he should not work with the public at all. AR 15. Thus, while Warren's treatment note supports an anxiety limitation, it does not support Crum's argument that the ALJ was required to include judgment and workplace behavior limitations in the second RFC determination.

The ALJ also addressed various treatment notes from Ms. Warren and R. William Brinck, M.D., including notes that were added to the record before the second hearing.

AR 19-23, 25. These notes indicate that while Crum suffered from depression and anxiety, he did well when taking medication regularly. AR 19, 651-52, 694, 750, 756. His thoughts were clear and he was cleanly and casually dressed during appointments. *Id.* Meanwhile, Ms. Cline noted that Crum felt well mentally, though struggled physically, and made progress with treatment. AR 700-02, 728-30.

Having carefully considered the record, I find that the ALJ appropriately analyzed evidence that could support inconsistent conclusions and made RFC findings that are within the permissible "zone of choice." *Culbertson*, 30 F.3d at 939. As such, the ALJ's second RFC determination is supported by substantial evidence on the record as a whole.

## C.     The VE's Testimony

Based on the VE's testimony, the ALJ found that Crum could not perform any past relevant work. AR 27. The ALJ posed a hypothetical question to determine, at Step Five, whether Crum could perform other work available in the national economy in light of his RFC, age, education and work experience. AR 28, 67-75. The VE testified that an individual with the characteristics described by the ALJ could perform light, unskilled work, such as a production assembler, hand packer or cleaner. AR 69.

Crum argues, for various reasons, that the VE's testimony does not constitute substantial evidence supporting a finding that Crum can perform other work in the national economy. First, he claims the ALJ erred because he did not ask the VE whether his testimony was consistent with the *Dictionary of Occupational Titles* (DOT). Doc. No. 12 at 9. Second, the DOT occupation number the VE provided for hand packer actually refers to the job of ampoule filler, while the job of hand packer does not exist in the DOT. *Id.* at 10. Finally, Crum argues the ALJ failed to incorporate the limitations from the first RFC into his hypothetical questions to the VE.

### 1.    *Applicable Standards*

The purpose of the VE's testimony is to "determine whether jobs exist for someone with [the] claimant's precise disabilities." *Jelinek v. Bowen*, 870 F.2d 457, 459 (8th Cir. 1989). In order to constitute substantial evidence to show that other jobs exist in the national economy, a VE's testimony must be based on a hypothetical question that includes all the claimant's impairments. *Hulsey*, 622 F.3d at 922; *Brachtel*, 132 F.3d at 420. This can be accomplished by "[capturing] the concrete consequences of those impairments" and limiting the "universe of work" the claimant can do. *Id.* (internal citation omitted). Only the impairments the ALJ has found credible must be included in the hypotheticals. *Pinkney*, 675 F. Supp. 2d at 19. On remand, the ALJ may pose a revised hypothetical with limitations based on his evaluation of both new and old testimony and medical evidence. *Hulsey*, 622 F.3d at 925 (requirements for other jobs were not incompatible with impairments described in the ALJ's revised hypothetical in a second hearing after receiving new evidence).

An ALJ errs if he or she fails to ask whether the VE's testimony is consistent with the DOT. *Renfrow v. Astrue*, 496 F.3d 918, 920 (8th Cir. 2007). If there is conflict between the VE's testimony and the demands listed in the DOT, the VE must explain it. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Generally, the DOT controls but may be rebutted if the VE can show that the cited jobs are ones the claimant can actually perform. *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995); *see also Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the [VE's] testimony provided that the record reflects an adequate basis for doing so."). However, if no conflict actually exists between the VE's testimony and the DOT, an ALJ's failure to ask if the VE's testimony is consistent with the DOT is harmless error that does not require remand. *Renfrow,* 496 F.3d at 921.

### 2. Analysis

#### a. Alleged Inconsistencies with the DOT

The parties agree that the VE erred in testifying about the job of hand packer. The DOT occupation number provided by the VE actually refers to the job of ampoule filler while the job of hand packer is not listed in the DOT. The Commissioner contends that the closest job, and the one the VE apparently meant to discuss, is hand packager, which is DOT listing 559.687-074.

The VE testified that the hand packer job is light, unskilled work. AR 69. He also stated that prolonged, necessary rest periods "would not be tolerated well" in that position. AR 70, 72. He explained that the job would not require any interaction with the general public or working as a team, though sharing work space with others might be appropriate. AR 73-74. Based on these characteristics, the VE and the ALJ concluded that the job of hand packer is one that Crum would be able to perform. AR 28, 69. Because the DOT includes no such job, and the DOT occupation number provided by the VE actually refers to a different job (ampoule filler), I find that the VE's testimony – and the ALJ's resulting findings – concerning the job of hand packer must be disregarded. While the Commissioner may be correct that the VE intended to refer to the job of hand packager, this is pure speculation – especially in light of the fact that the DOT listing number for that job does not match the VE's testimony.

Disregarding the hand packer job does not end the analysis, as the VE testified about two other jobs – production assembler and cleaner. AR 69. According to the VE, approximately 200,000 production assembler positions exist in the national economy, including approximately 7,000 in this region. *Id.* Similarly, there are about 350,000 cleaner positions in the national economy, with approximately 14,000 of those positions in this region. *Id.* The VE testified that these are light, unskilled positions that the hypothetical individual described by the ALJ could perform. *Id.* The ALJ adopted the VE's testimony concerning these positions in making a Step Five finding that Crum can

perform other work available in the national economy. AR 28-29. If the VE's testimony about these positions is accurate, then disregarding the job of hand packer would not impact the Step Five analysis.

Crum argues, however, that the DOT job descriptions for the positions of production assembler and cleaner are inconsistent with the VE's testimony. The DOT describes the production assembler position as follows:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. <u>Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker.</u> Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

DOT 706.684-022 [emphasis added]. Crum argues that the underlined portion of this description is inconsistent with the VE's testimony because the ALJ's hypothetical included a restriction that interaction with supervisors, coworkers and the public must be "absolutely minimized." AR 68. According to Crum, a position that would require him to work as a member of an assembly group necessarily involves more than minimal interaction with coworkers. However, the DOT's detailed specifications of the position's requirements state that it does not require significant interaction with people. DOT 706.684-022. Indeed, those specifications indicate that the requirement of "talking" is "not present." *Id*. Thus, while the position may require that Crum work as a member of an assembly group, and pass units to the next member, the position does not require

discussion or other interaction among the group members. As such, I reject Crum's argument that the VE's testimony about the production assembler position is inconsistent with the DOT.

> The DOT's description of the cleaner position is as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

DOT 323.687-014. As with the production assembler job, the DOT's specifications indicate that this position requires no significant interaction with people and no talking. *Id.* Again, then, there is no conflict between the VE's testimony and the DOT. However, Crum points to the VE's acknowledgement that some brief contact with the public might occur, such as "bump[ing] into somebody from the public in the halls." AR 73. Crum argues that this creates an inconsistency between the VE's testimony and the ALJ's hypothetical question, which included a restriction that the hypothetical individual should "certainly not [be] working with the general public at all." AR 68. I disagree. Encountering a member of the general public in the course of performing the job of cleaner does not equate to "working with" the general public. Neither the VE's testimony nor the DOT's description suggests that an individual working as a cleaner must take directions from or provide information to members of the general public. With regard to the job of cleaner, I find that there are no inconsistencies between the VE's testimony and either (a) the DOT or (b) the ALJ's hypothetical questions.

In short, the VE's testimony concerning the hand packer position is inconsistent with the DOT, as no such position exists in the DOT and the listing number provided by

the VE corresponds to a different position. However, disregarding all testimony about that position does not impact the Step Five analysis. The VE identified two other positions available in the national economy that an individual described in the ALJ's hypothetical question could perform. The VE's testimony concerning both positions is consistent with the DOT. As such, the VE's inconsistency as to the phantom hand packer position does not require remand.[1]

### b.    The Hypothetical Question

Crum's remaining argument is that the hypothetical question the ALJ posed to the VE during the second hearing failed to account for all of his impairments. In particular, he contends that the question should have incorporated the same limitations contained in the first RFC concerning Crum's ability to respond to changes in the workplace, complete a normal workday and perform at a consistent pace. Doc. No. 12 at 11-12. I have already determined, however, that the ALJ's second RFC, which omitted those moderate limitations, is supported by substantial evidence. Thus, if the ALJ's hypothetical question during the second hearing was consistent with the second RFC, there is no basis for remand.

Crum does not contend that the hypothetical question failed to conform to the second RFC. Indeed, a comparison of the second RFC and the relevant hypothetical question shows that they are virtually identical. AR 15, 68. Thus, I must reject Crum's argument. The hypothetical question posed during the second hearing properly included all limitations that the ALJ found to be credible. As such, the VE's testimony in response to that question constituted substantial evidence supporting the ALJ's Step Five finding. *Hulsey*, 622 F.3d at 922.

---

[1] Because the only inconsistency between the VE's testimony and the DOT is inconsequential, the ALJ's failure to ask the VE if his opinions are consistent with the DOT is harmless error. *Renfrow*, 496 F.3d at 921.

## VI.    CONCLUSION AND RECOMMENDATION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Crum was not disabled be **affirmed** and that judgment be entered against Crum and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 17th day of July, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE