# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

NOAH WILLIAM CRUM,

    Plaintiff,

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

No. C14-4055-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION**

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND ................................................ 2*
   *A. Procedural Background ............................................................ 2*
   *B. Factual Background ................................................................. 3*
*II. DISABILITY CLAIM AND ONSET DATE ............................................ 5*
*III. LEGAL ANALYSIS ........................................................................... 5*
   *A. Standard Of Review ................................................................. 5*
   *B. Crum's Objections ................................................................. 11*
      *1. Law of the case objection ................................................. 11*
      *2. Hypothetical question to the VE objection ......................... 16*
*IV. CONCLUSION ............................................................................... 20*

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

This case is before me on a Report and Recommendation from United States Magistrate Judge Leonard T. Strand, filed on July 17, 2015 (docket no. 18). In his Report and Recommendation, Judge Strand recommends that I affirm the Commissioner's decision. Plaintiff Noah William Crum has filed timely objections to the Report and Recommendation.

Crum objects to the Report and Recommendation on the following grounds: (1) the Administrative Law Judge's ("ALJ's") decision regarding Crum's residual functional capacity violates the law of the case doctrine; and (2) the ALJ's posed improper hypothetical question to the vocational expert ("VE"). Crum requests that the case be reversed and remanded for further proceedings.

The Commissioner filed a timely response to Crum's objections. The Commissioner contends that the ALJ correctly weighed the evidence and made a substantially supported finding based on the record as a whole that Crum did not qualify for benefits because he could perform three different jobs available in substantial numbers in the national economy. The Commissioner further argues that the law of the case doctrine did not require that the ALJ adopt the factual findings from his initial decision after the Appeals Council remanded the case for reconsideration of the evidence and analysis of new evidence. Finally, the Commissioner contends that the VE identified jobs that matched the ALJ's hypothetical question and the ALJ then cited as work that Crum could undertake. Therefore, the Commissioner argues that I should overrule all of Crum's objections and accept the Report and Recommendation.

For the reasons discussed below, I accept the Report and Recommendation, and affirm the Commissioner's decision that Crum is not disabled. Accordingly, I enter judgment in favor of the Commissioner and against Crum.

### B. *Factual Background*

On remand from the Appeals Council, the ALJ made the following findings:

> 1  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2  The claimant has not engaged in substantial gainful activity since December 17, 2009, the amended alleged onset date (20 C.F.R. § 404.1571 et seq., and 416.971 et seq.).
>
> 3.  The claimant has the following severe impairments: depressive disorder, not otherwise specified (NOS); anxiety disorder, NOS; diabetes mellitus; a history of atherosclerotic heart disease; hypertension; and obesity (20 C.F.R. § 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), i.e., he can lift and carry 20 pounds occasionally and ten pounds frequently; sit six hours

in an eight-hour workday; stand six hours in an eight-hour workday; walk six hours in an eight-hour workday; and has unlimited use of the extremities. He should avoid climbing ladders and scaffolding. He should avoid constant fingering, bilaterally. He should avoid concentrated vibration. Due to his mental impairments, he should be able to remember and understand instructions, procedures, and locations. Due to trying to interact with supervisors, co-workers, and the public would need to look at some type of employment that would be absolutely minimized and certainly not working with the general public at all. He could exercise good judgment and respond appropriately to changes in the workplace.

. . . .

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565 and 416.965).

. . . .

7. The claimant was born on December 17, 1959 and was 50 years old, which is defined as a person closely approaching advanced age (age 50-54), on the amended alleged disability onset date (20 C.F.R. § 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R.§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that

the claimant can perform (20 C.F.R. § 404.1569, 404-1569(a), 416.969, and 416.969(a)).

. . . .

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2009, the amended alleged onset date, through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920(g)).

AR at 12-29.

## II. DISABILITY CLAIM AND ONSET DATE

On January 9, 2009, Crum filed for Social Security Disability Benefits (DIB) and SSI under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. He alleged a disability onset date of February 3, 2012. *Id*. He claimed that his disability was a consequence of his anxiety, depression, diabetes, heart disease, hypertension, and obesity.

## III. LEGAL ANALYSIS

### A. Standard Of Review

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); see FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen de novo review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how

certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required de novo review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Cooperative Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a

8

clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

---

[1]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or

Here, Crum has objected to several of Judge Strand's findings. Although I will review these findings *de novo*, and Judge Strand's other findings for clear error, I review the Commissioner's decision to determine whether the correct legal standards were applied and "whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999)). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Page*, 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." (quoting *Haggard*, 175 F.3d at 594)). "If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)). Even if the

---

her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed *de novo*, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

With these standards in mind, I turn to consider Crum's objections to Judge Strand's Report and Recommendation.

### B. *Crum's Objections*

#### 1. *Law of the case objection*

Crum contends that the ALJ's decision on remand violated the law of the case by amending Crum's RFC. Crum argues that the Appeals Council's remand order did not permit the ALJ to make a *de novo* determination of his RFC. The Commissioner argues no violation of the law of the case occurred because the remand order did not preclude the ALJ from a *de novo* determination of Crum's RFC based on the ALJ's reconsideration of all evidence, including new evidence presented on remand.

The ALJ's discretion to make a *de novo* determination of Crum's RFC is limited by two related principles, the mandate rule and the law of the case doctrine. As I previously observed:

> "The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings. . . ." *Brachtel*, 132 F.3d at 419 (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)). It also applies to administrative agencies on remand. *Id.* "This principle [of law of the case] applies to all matters decided by necessary implication as well as those addressed directly." *Calderon v. Astrue*, 683 F.Supp.2d 273, 276 (E.D.N.Y.2010) (quoting *Carrillo v. Heckler*, 599 F. Supp. 1164, 1168 (S.D.N.Y. 1984)). This

11

> is particularly important in Social Security appeals "because a district court is never called upon to address issues resolved in the claimant's favor; the claimant obviously cannot challenge such determinations, and the Commissioner cannot challenge them because they were made by him or his delegate in the first place." *Calderon*, 683 F. Supp.2d at 276–77.

*Meyerhoff v. Colvin*, No. C12-3046-MWB. 2013 WL 3283696, at *18 (N.D. Iowa June 28, 2013).

"'The mandate rule requires a lower court to adhere to the commands of a higher court on remand.'" *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014) (quoting *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995)); *see United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citing *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)). "The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir.1999). "In essence, the mandate rule is a specific application of the law-of-the-case doctrine." *Id.; see Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir.1992).

A remand may be general or limited in scope. *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 570 (6th Cir. 2001). A limited remand explicitly outlines the issues to be addressed by a district court and creates "a narrow framework within which the district court must operate." *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir.1999) (citing *United States v. Moore*, 131 F.3d 595, 598 (6th Cir.1997)). Thus, the law of the case doctrine does not apply to general remand orders or the issues that formed the basis for remand. *See Williams v. Apfel*, 65 F. Supp. 2d 1223, 1230 (N.D. Okla. 1999). When subsequent proceedings follow a general remand, the ALJ may properly decide anything not foreclosed by the mandate. *See Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 706 (10th Cir. 1993) ("When further proceedings follow a general remand, the lower court is free to decide anything not foreclosed by the

mandate issued by the higher court.") (quotation marks omitted); *see also Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 711 (10th Cir. 2004) (same)

To decide whether the ALJ violated the Appeals Council's remand order, it is necessary to examine the remand order and then look at what the ALJ did. *Meyerhoff v. Colvin*, No. C12-3046-MWB. 2013 WL 3283696, at *17 (holding that the scope of remand was governed by the Appeals Council's remand order); *see Hicks v. Gates Rubber Co.*, 928 F.2d 966, 969 (10th Cir. 1991)( "To decide whether the district court violated the mandate, it is necessary to examine the mandate and then look at what the district court did."); *see also Barber v. Int'l Bhd. of Boilermakers*, 841 F.2d 1067, 1071 (11th Cir. 1988) ("As should be apparent, the application of these mandate rule principles will . . . depend considerably on the stage a case has reached when it goes up on appeal and on the language of the appellate court's mandate and/or opinion.").

The ALJ's first RFC determination of Crum stated in pertinent part:

> Due to his mental impairments, he would have moderate limitations in the ability to respond appropriately to changes in the work setting and in the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

AR at 120. The Appeals Council's remand order stated in relevant part:

> Upon remand the [ALJ] will:
>
> - Obtain additional evidence concerning the claimant's mental and physical impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The additional evidence may include, if warranted and available,

13

> consultative examinations with psychological testing and medical source statements about what the claimant can still do despite the impairments.
>
> - Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p) . . .
>
> . . . .
>
> In compliance with the above, the [ALJ] will offer . . . a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

AR at 135-36.

On remand, the ALJ conducted a second evidentiary hearing. Following that hearing, the ALJ made the following findings regarding Crum's RFC:

> Due to his mental impairments, he should be able to remember and understand instructions, procedures, and locations. Due to trying to interact with supervisors, co-workers, and the public would need to look at some type of employment that would be absolutely minimized and certainly not working with the general public at all. He could exercise good judgment and respond appropriately to changes in the workplace.

AR at 15.

Crum argues that the ALJ was bound to the mental limitations he set out in his first decision and could only clarify or add detail to those limitations on remand. Examination of the Appeals Council's remand order fails to supports Crum's argument. In its remand order, the Appeals Council did not mandate that the ALJ carry over any

14

findings from the first decision. To the contrary, the Appeals Council vacated the hearing decision.

"Vacate" means "[t]o nullify or cancel; make void; invalidate." BLACK'S LAW DICTIONARY 1584 (8th ed. 2004); *see United States v. Maxwell*, 590 F.3d 585, 589 (8th Cir. 2010) ("'A judgment vacated on appeal is of no further force and effect.'") (quoting *Riha v. Int'l Tel. & Tel. Corp.*, 533 F.2d 1053, 1054 (8th Cir. 1976); *Creighton v. Anderson*, 922 F.2d 443, 449 (8th Cir. 1990) ("A vacated opinion has no further force and effect."); *see also Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, --- F.3d ----, 2015 WL 4727198, at *11 (D.C. Cir. 2015) (noting that "the word 'vacate' means, among other things, 'to cancel or rescind' and 'to make of no authority or validity.'") (quoting *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983)); *Rice v. Alpha Sec., Inc.*, 556 Fed. App'x 257, 259 (4th Cir. 2014) (noting that "[t]he effect of 'vacating' an order is to 'nullify or cancel; make void; invalidate.'"(quoting *Ferguson v. Commonwealth*, 51 Va. App. 427, 658 S.E.2d 692, 695 (2008)); *NLRB v. Goodless Bros. Elec. Co.*, 285 F.3d 102, 110 (1st Cir. 2002) (defining "vacate" as "to render inoperative; deprive of validity; void; annul" and that an order to vacate "wipes the slate clean").

In *Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007), the Ninth Circuit Court of Appeals rejected precisely the same argument made by Crum here. In *Massachi*, a social security claimant argued that the ALJ was not free on remand to change the claimant's RFC and that the ALJ's new finding was error. *Id*. Rejecting this argument, the court of appeals pointed out that, because the Appeals Council vacated the ALJ's original decision and specifically instructed the ALJ to reassess the claimant's residual functional capacity, "the ALJ's original finding no longer existed." *Id*. Likewise, here, by vacating the ALJ's original decision, the Appeals Council indicated that the ALJ's original decision should have no effect on remand. Moreover, the Appeals Council did

15

not impose any express limits on the scope of the ALJ's reconsideration on remand. Nor did the Appeals Council explicitly or impliedly decide any issues of fact concerning Crum's RFC. Instead, the Appeals Council directed the ALJ to assess the compatibility of Crum's abilities with the demands of his past relevant work and to assess the importance of new evidence related to Crum's spinal functioning. The Appeals Council directed that the ALJ should obtain additional evidence concerning Crum's mental and physical impairments; further consider Crum's residual functional capacity; and, if necessary, obtain the services of a vocational expert and ask hypothetical questions that reflected the specific limitations established by the record as a whole. The Appeals Council instructed the ALJ to provide Crum a hearing, address the new evidence, take any further necessary actions, and issue a new decision. The ALJ followed the Appeals Council's directive by giving "further consideration to the claimant's maximum residual functional capacity" and making new findings as to Crum's RFC. In doing so, the ALJ received and considered approximately 350 pages of new medical evidence. Considering the Appeals Council's emphasis in its remand order directing the ALJ to review new evidence, and its utter lack of any mention of binding facts, Judge Strand correctly determined that the law of the case doctrine was inapplicable to the ALJ's decision on remand. Accordingly, Crum's objection is denied.

### 2. *Hypothetical question to the VE objection*

Crum also objects to that portion of the Report and Recommendation in which Judge Strand rejected Crum's argument that even if the law of the case does not apply, the ALJ should have posed a different hypothetical question to the VE.

It is generally accepted that VE testimony in response to a hypothetical question is substantial evidence if the hypothetical sets forth the credible impairments with

reasonable precision.[2] *See Starr v. Sullivan*, 981 F.2d 1006 (8th Cir. 1992). As the Eighth Circuit Court of Appeals has explained:

> "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694–95 (8th Cir. 1996). Testimony from a vocational expert based on a properly-phrased hypothetical constitutes substantial evidence. *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The converse is also true. *See Newton*, 92 F.3d at 695. However, "[w]hile the hypothetical question must set forth all the claimant's impairments, [citation omitted], it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments." *Roe*, 92 F.3d at 676.

*Howard v. Massanari,* 255 F.3d 557, 581–82 (8th Cir. 2001); *accord Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir.2001).

Crum argues that the ALJ failed to incorporate all of Crum's limitations in his RFC in posing hypothetical questions to the VE. Specifically, Crum argues that medical records support his contention that Jeanette Tobin, a licensed social worker, "noted that Mr. Crum's insight and concentration were only fair, and his memory was poor, in numerous medical records over a lengthy period of time between the first and second hearings[.]" Crum's objections at 9-10. However, Judge Strand accurately observed that, "[n]otes from Ms. Tobin classify [Crum's] judgment as good and his insight as

---

[2] A series of hypothetical questions, rather than a single question, is also acceptable so long as all credible limitations were presented to the vocational expert. *See Bland v. Bowen*, 861 F.2d 533, 534 (8th Cir. 1988) (VE was asked series of hypothetical questions that embodied claimant's various exertional and nonexertional limitations); *Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir. 1986) (ALJ posed series of hypothetical questions that included claimant's physical impairments, but varied severity of limitations imposed).

17

either fair or excellent. AR 743, 748, 752, 754, 758, 760, 886, 890-96, 901, 903, 907-14, 1022, 1027-29, 1032, 1037-39." Report and Recommendation at 17. Judge Strand further recognized that the ALJ discussed Tobin's findings in the course of the ALJ's RFC determination and made a specific finding that Tobin's opinion was not supported by the medical evidence, including her own treatment notes.

Crum also argues that the ALJ erred by not asking the VE if his testimony was consistent with *the Dictionary of Occupational Titles* ("DOT"). Crum argues that the DOT job descriptions for the positions of production assembler and cleaner are inconsistent with the VE's testimony. Judge Strand correctly determined that such an error was harmless because the record did not disclose any actual conflict between the VE's testimony and the DOT's descriptions of the positions of production assembler and cleaner. The DOT describes the production assembler position as follows:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

DOT 706.684-022. The DOT's description of the cleaner position is:

18

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

DOT 323.687-014. Crum argues that these descriptions are inconsistent with the VE's testimony because the ALJ's hypothetical included a restriction that interaction with supervisors, coworkers, and the public must be "absolutely minimized." AR 68. Crum contends that both positions would require him to have more than minimal interactions with coworkers or the public. Crum's argument is not well founded. As Judge Strand recognized, under the DOT's specifications, neither position requires significant interaction with people and no talking. *See e.g.* DOT 706.684–022, Assembler, Small Products I, 1991 WL 679050 (indicating that taking instructions and helping people are not a significant aspect of this occupation and that talking does not exist in this occupation); DOT § 323.687–014, 1991 WL 672783 (not requiring talking). Thus, I agree with Judge Strand that there is no conflict between the VE's testimony and the DOT's descriptions of these positions. Accordingly, Crum's objection is denied.

## *IV.  CONCLUSION*

For the reasons previously discussed, I deny Crum's objections to Judge Strand's Report and Recommendation, accept Judge Strand's Report and Recommendation, and affirm the ALJ's decision.  Although Crum's condition does cause him some limitations in the type of work that he can perform, he is not disabled.  The ALJ's decision was supported by substantial evidence in the record as a whole.

IT IS SO ORDERED.

**DATED** this 27th day of August, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA